**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MELVIN PERRY,**

**Plaintiff,**

**vs.** **9:25-CV-284 (MAD/MJK)**

**M. MOORE, *et al.*,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**MELVIN PERRY**
Ogdensburg, New York
Plaintiff, *pro se*

**HON. LETITIA JAMES** **OLIVIA R. COX, AAG**
Attorney General for the State of New York
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

*Pro se* Plaintiff Melvin Perry initiated this action through the filing of a complaint on March 4, 2025, alleging a Fourteenth Amendment due process violation related to conduct that occurred during his incarceration at Hudson Correctional Facility ("Hudson"). *See* Dkt. No. 1. On March 2, 2026, Defendants Michael Moore, Kenneth Ivey, and Jill Gaylord (collectively, "Defendants") filed a motion for summary judgment. *See* Dkt. No. 25.[1] Plaintiff responded in opposition, *see* Dkt. No. 28, and Defendants filed a reply, *see* Dkt. No. 30. On July 9, 2026,

[1] Plaintiff named additional Defendants in his complaint, *see* Dkt. No. 1, who were dismissed by Order of the Court on April 23, 2025, *see* Dkt. No. 8.

Magistrate Judge Mitchell J. Katz filed a Report-Recommendation recommending that the Court grant in part and deny in part Defendants' motion. *See* Dkt. No. 31. On July 30, 2026, Defendants filed objections related to the portions of their summary judgment motion that Magistrate Judge Katz recommended that the Court deny. *See* Dkt. No. 34. Plaintiff did not respond to those objections. For the reasons that follow, the Report-Recommendation is adopted to the extent set forth in this Memorandum-Decision and Order.

When a party files specific objections to a magistrate judge's recommendations, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which the objection is made." 28 U.S.C. § 636(b)(1). When a party declines to file objections or files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). "A litigant objecting to a [report and recommendation] may not simply rest on the briefs considered by the magistrate judge; she must lodge a specific objection to some specific aspect of the [report and recommendation]." *Nambiar v. Cent. Orthopedic Grp., LLP,* 158 F.4th 349, 361 (2d Cir. 2025). Additionally, "[w]hen a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments *de novo*." *Id.* After appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

As to Magistrate Judge Katz's recitation of the factual and procedural background of the case as well as the legal conclusions which have not been objected to by either party, the Court

finds no clear error in those aspects of the Report-Recommendation. The Court assumes the parties' familiarity with the same. The Court will separately review, de novo, the specific objections made by Defendants.

## I. DISCUSSION

### A. Due Process Claim

Plaintiff alleges that he was terminated from the Work Release Program (the "Program") at Hudson Correctional Facility without due process. *See* Dkt. No. 1. Plaintiff's glasses were broken while he was working in the Program. *See id.* at ¶ 19. Plaintiff submitted two reimbursement requests for his glasses: one for $75.00 and one for $245.00. *See id.* According to Defendant Moore, who is the Supervising Offender Rehabilitation Coordinator for the Temporary Release Program at Hudson, "Plaintiff submitted a disbursement form directly to his employer, Hudson Foods Venture, without first submitting it directly to Hudson [Correctional Facility] for processing, in an attempt get additional money from his employer." Dkt. No. 25-6 at ¶ 21. Therefore, Plaintiff was referred for disciplinary action. *See id.*

If an incarcerated individual violates the Temporary Release Rules, the Temporary Release Committee reviews the alleged violation under an Administrative 4187 review. *See* Dkt. No. 25-4 at ¶¶ 3-4. Two 4187 hearings were held regarding Plaintiff's alleged violation of the Program's reimbursement rules. First, on October 4, 2024, a hearing was held which resulted in a "recommendation to the Superintendent . . . for Plaintiff to receive 90 days' probation" from the Program. Dkt. No. 1 at ¶ 32. Deputy Superintendent Jeffrey Brown "affirmed" that decision. *Id.* at ¶ 33. However, Superintendent "Stephen Brandow and/or [Deputy Superintendent] Cesar Loarca, Supt. Brandow and/or [Deputy Superintendent] Loarca disagreed . . . [and] believed that Plaintiff should be removed from the [Program] entirely due to his fraudulent behavior." *Id.* at ¶

33. Thereafter, a second hearing was held on October 15, 2024. *See id.* at ¶ 36. Defendant Moore "advised Plaintiff that the purpose of the hearing was to amend the previous hearing." *Id.* at ¶ 41. "On October 19, 2024, Plaintiff received the Continuous Temporary Release Programs [] Review Form 4187, advising him in writing of the [] recommendation and the Superintendent's decision, dated October 16, 2024, to remove Plaintiff from the [Work Release Program] for engaging in fraudulent behavior and attempting to profit by submitting a false disbursement form." *Id.* at ¶ 44.

Defendants argued in their summary judgment motion that Plaintiff's due process claim fails as a matter of law because Plaintiff received sufficient process before being terminated from the Program. *See* Dkt. No. 25-7 at 10-13. Magistrate Judge Katz found an issue of material fact as to whether Plaintiff received "'a written statement by the factfinder detailing the reasons for revocation and identifying "some evidence" in the record to support the findings.'" Dkt. No. 31 at 13-14 (quoting *Dicks v. Chow*, 382 Fed. Appx. 28, 30 (2d Cir. 2010) (summary order)). Specifically, Magistrate Judge Katz concluded that following the October 4, 2025, hearing, "someone in the Hudson administration wanted to change the recommendation" from probation to termination from the Program. *Id.* at 16. Magistrate Judge Katz stated, "Hudson officials did not follow the regulatory process." *Id.* at 18. He noted that "[s]ome Hudson administration official disagreed with [the probation] decision and because the regulation did not provide the superintendent's office with an appeal of its own decision, the office gave itself a 'do over.'" *Id.* at 19. Magistrate Judge Katz also recommended that the Court deny Defendants' summary judgment motion on Plaintiffs' claims that he did not receive appropriate notice for the October 15, 2024, hearing, and that the presider of that hearing was not impartial. *See id.* at 20-25.

Defendants argue in their objections that Magistrate Judge Katz erred in finding questions

of fact regarding "Defendants' purported violation of New York state regulations." Dkt. No. 34 at 4. Specifically, Defendants contend (1) a violation of a state regulation does not equate to a constitutional due process violation; (2) "the record evidence establishes that Plaintiff received all process he was due under the Fourteenth Amendment"; (3) "Plaintiff did receive a written statement detailing the reasons for his revocation from the [Program] on October 19, 2024"; (4) Defendant "Moore was not the final decisionmaker—he merely put forth a recommendation that was considered by the Superintendent"; (5) "Plaintiff's self-serving, unsupported claims of 'duress' are insufficient to create a genuine issue of material fact as to" whether Plaintiff received appropriate notice; and (6) "Plaintiff was presented with a neutral hearing body." *Id.* at 5-8.

Defendants and Magistrate Judge Katz discussed the Second Circuit's decision in *Dicks v. Chow*, 382 Fed. Appx. 28, 30 (2d Cir. 2010) (summary order), whereby the Second Circuit held that "[i]t is well-settled that prisoners have a liberty interest in their continued participation in a work release program." *Id.* (citing *Friedl v. City of New York*, 210 F.3d 79, 84 (2d Cir. 2000)); *see also* Dkt. No. 25-7 at 10; Dkt. No. 31 at 13. "In the work release revocation context," the Second Circuit stated that due process requires the following:

> (1) written notice of the claimed basis for revocation; (2) disclosure of evidence against the inmate; (3) an opportunity to be heard in person and to present evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a neutral hearing body; and (6) a written statement by the factfinder detailing the reasons for revocation and identifying "some evidence" in the record to support the findings.

*Dicks*, 382 Fed. Appx. at 30 (citation omitted).

Magistrate Judge Katz first found an issue of material fact related to Plaintiff's due process claim because, although Defendant Moore declared that he was "instructed by administration to ensure Plaintiff was not provided with a copy of the inaccurate 4187 response and to commence a

new 4187 review and hearing[,]" Dkt. No. 25-6 at ¶ 34, "the form was not inaccurate. The form was an accurate statement of the first hearing's outcome. . . . Instead, someone in the Hudson administration wanted to change the recommendation that [Deputy Superintendent] Brown affirmed. . . . But there was no procedure to do so." Dkt. No. 31 at 16 (citations omitted).

Reviewing the issues de novo, the Court finds that there is no dispute of material fact on the issue of whether Plaintiff received "a written statement by the factfinder detailing the reasons for revocation and identifying 'some evidence' in the record to support the findings." *Dicks*, 382 Fed. Appx. at 30. Defendants attached to their summary judgment motion, Form 4187, which Plaintiff signed, and which states that the Committee's prior decision was being "amend[]ed" and Plaintiff was being removed from the Program because he submitted two disbursement requests for his broken glasses, one for $245.00 and one for $75.00. Dkt. No. 25-6 at 51. Plaintiff does not dispute the authenticity of that document nor contest that he received and signed it. *See* Dkt. Nos. 1, 28. Rather, Plaintiff alleges in his complaint and argues in his response to the summary judgment motion that the submission of two reimbursement forms was a mistake which did not warrant his removal from the Program. *See* Dkt. Nos. 1, 28. However, Plaintiff does not dispute that he was provided with a written statement as to why he was terminated from the Program—which satisfies the sixth *Friedl* factor.

Magistrate Judge Katz focused on the lack of a statutory or regulatory procedure which permits a superintendent or deputy superintendent to verbally override another deputy superintendent's decision to affirm the Temporary Release Committee's recommendation. *See* Dkt. No. 31 at 17-20. It is true that "[i]f the temporary release committee does conduct a review of an inmate's program adjustment, the temporary release committee must submit a recommendation to the superintendent concerning the inmate's continued participation in the

temporary release program." 7 N.Y. Comp. Codes R. & Regs. § 1904.2(f). Then, "[t]he superintendent shall either approve or disapprove a recommendation made by the temporary release committee. *If the superintendent disapproves [of] a temporary release committee recommendation, he/she shall submit a written statement to the temporary release committee*." *Id.* 1904.2(i) (emphasis added).

As Magistrate Judge Katz stated in his Report-Recommendation, there is nothing in the record demonstrating that "the superintendent . . . submit[ted] a written statement to the temporary release committee" explaining why he disagreed with the recommendation to place Plaintiff on probation. 7 N.Y. Comp. Codes R. & Regs. § 1904.2(i). That appears to be violative of the regulations.

However, as Defendants argue in their objections, *see* Dkt. No. 34 at 5, "[a] breach of procedural requirements does not create a due process violation unless an individual was 'denied a fair forum for protecting his state rights.'" *McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) (quoting *Atencio v. Board of Educ.*, 658 F.2d 774, 779-80 (10th Cir. 1981)); *see also Funes v. Francis*, 810 F. Supp. 3d 472, 499 (S.D.N.Y. 2025) ("[T]he Supreme Court has long recognized that, where 'the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.' . . . Of course, when the minimal elements of due process—notice and an opportunity to be heard—have been satisfied, a failure by an agency to adhere to its own regulations does not, of itself, violate due process") (citation omitted); *Owen v. City of Buffalo, New York*, 465 F. Supp. 3d 267, 271 (W.D.N.Y. 2020) ("But because 'state statutes do not create federally protected due process entitlements,' the alleged failure to follow the New York Criminal Procedure Law does not, on its own, state a viable due process claim") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). Therefore, the Court does not find that the issue of

whether the Superintendent provided a written statement for why he disagreed with the other officials' recommendation equates to a constitutional due process violation.

The Court comes to a contrary conclusion as to the first due process requirement reiterated by the Second Circuit: "written notice of the claimed basis for revocation." *Dicks*, 382 Fed. Appx. at 30 (citing *Friedl*, 210 F.3d at 84). On October 15, 2024, Plaintiff received a Form 4187 Addendum which informed him that he would be having a second hearing later that day. *See* Dkt. No. 25-6 at 42-43. The Form states, "[y]ou may waive your right to a 24-hour notice by signing here[.]" *Id.* at 42. Plaintiff wrote, "under duress." *Id.* at 42-43. In his response to Defendants' summary judgment motion, Plaintiff stated that he was "caus[ed] to sign under duress [because he] didn't know why another hearing was warranted." Dkt. No. 28 at 2. Plaintiff stated that as an incarcerated individual, he "must comply with all orders. [He] was told to sign, so [he] did as ordered to do." *Id.* During his deposition, Plaintiff testified that he signed the form "under duress" which meant that he "was stressed out." Dkt. No. 25-2 at 64. Plaintiff stated he "couldn't understand why [he] was having another [hearing] without giving [him] a reason why another one had to be done in writing." *Id.* Defendant Ivey "just told [Plaintiff] it was a clerical error, and that was it." *Id.* Plaintiff testified that he "was informed by [Defendant Herringshaw] that [someone] was backpedaling to try and kick [Plaintiff] out. So [he] wrote under duress and everything[.]" *Id.* Plaintiff then reiterated that he did not want to "deny a direct order. If [he is] told to signed something, [he] must sign it." *Id.* Despite a signature appearing next to the words "under duress," Plaintiff testified that he did not sign his name. *Id.* at 63-65.

Magistrate Judge Katz acknowledged that during the October 15, 2024, hearing Plaintiff "waived his 24-hour notice right on the record." Dkt. No. 31 at 20 (citing Dkt. No. 25-6 at 48). However, Magistrate Judge Katz found an issue of fact concerning "the first Friedl element"

because Defense Counsel fails to address why P[laintiff]—who claims he was just ordered by Ivey or Moore to waive his notice right—would be compelled to request 24-hour notice on the record when Moore and Ivey were part of the October 15 Committee." *Id.* at 20-21.

The Court does not find that the case must go to trial based on the 24-hour requirement set forth in 7 N.Y. Comp. Codes R. & Regs. § 1904.2(h)(1) because, as explained, a violation of a regulatory procedural requirement does not necessarily establish a due process violation. *See Morton v. Cnty. of Erie*, 335 F. Supp. 3d 449, 461 (W.D.N.Y. 2018), *aff'd*, 796 Fed. Appx. 40 (2d Cir. 2019) ("Failure to follow internal rules does not, in and of itself, give rise to a federal due process violation"); *Ivey v. City of Albany*, No. 1:21-CV-684, 2023 WL 4931312, *3 (N.D.N.Y. Aug. 2, 2023) ("[C]ourts in this Circuit have repeatedly found that a state agency's failure to abide by its own procedures does not, alone, infringe any federally protected right").

However, Defendants have not established as a matter of law that Plaintiff received "written notice of the claimed basis for revocation." *Dicks*, 382 Fed. Appx. at 30. The document on which Plaintiff wrote, "under duress" states, "You have been referred to the Temporary Release Committee by (Temporary Release Staff or Other Staff) A. Herringhshaw . . . for the following reasons(s)[.]" Dkt. No. 25-6 at 42. There are then six lines for the referring staff member to explain the allegations. *See id.* That section is blank on the Form presented to Plaintiff. *See id.* The Form is signed and dated by Defendant Ivey.

Plaintiff states in his response to the summary judgment motion that the form "[s]hows nothing as to specific reason(s) for refer[r]al at least 24 hours prior to meeting." Dkt. No. 28 at 2. Plaintiff asserts that not only was there "no advance 24-notice," but there was also no "statement of actual reason. In the record nothing to indicate that decision to remove Plaintiff from TWRP was based on any form of new evidence." *Id.* at 6. Plaintiff again wrote in his response that as to

document dated "10/15/24[,] no actual reason or specific reason. Signed under duress for [incarcerated individual] not made aware of reasoning." *Id.* at 7. Plaintiff writes once more, "Plaintiff having found no reasoning why 2nd TRC." *Id.* at 8. Plaintiff attached a copy of the Form 4187 from October 15, 2024, to his response, which includes his notation stating, "under duress," and is left blank in the section asking for the "reason(s)" for the recommendation. Dkt. No. 28 at 15.

In their summary judgment motion, Defendants attested that "Plaintiff received written notice of the claimed violation of [the Work Release Program] on October 15, 2024, and waived his right to receive 24-hour notice." Dkt. No. 25-7 at 11. Defendants utilized similar language in their reply: "The record reflects that Plaintiff received written notice of the claimed violation of [the Work Release Program] on October 15, 2024, and waived his right to receive 24-hour notice by signing Form 4187." Dkt. No. 30 at 6.

In their statement of material facts, Defendants cited the declaration from Defendant Ivey. *See* Dkt. No. 25-1 at 6, ¶ 34. In his declaration, Defendant Ivey stated, "on October 15, 2024, . . . I served Plaintiff with another 24-hour Notice of Continuous Temporary Release Programs TRC Review Form 4187, advising him of his pending TRC hearing and the allegations against him." Dkt. No. 25-4 at 3, ¶ 16. Defendant Ivey cited the Form 4187 that is blank where the author was instructed to explain the "reason(s)" for the recommendation. *Id.*

The Court finds that these facts are sufficient to warrant denying Defendant's motion for summary judgment on Plaintiff's due process claim. Regardless of whether Plaintiff was truly "under duress" when he signed the form, Defendants contend Plaintiff received adequate notice of the second hearing which resulted in the termination of his participation in the Work Release Program, but Plaintiff states he was not given a single reason, in writing, for that second hearing.

The documentary evidence related to the notice for the second hearing confirms Plaintiff's perspective. Because due process requires "written notice of the claimed basis for revocation." *Dicks*, 382 Fed. Appx. at 30 (citing *Friedl*, 210 F.3d at 84), this dispute supports denying summary judgment.

The same conclusion is appropriate on the issue of whether Plaintiff's October 15, 2024, hearing was presided over by "a neutral hearing body." *Dicks*, 382 Fed. Appx. at 30. Magistrate Judge Katz concluded that based on a review of the record, "a reasonable juror could determine that Moore and Ivey were not neutral arbiters" when they presided over the October 15, 2024, hearing. Dkt. No. 31 at 23. The Court has reviewed the entire record and agrees.

In their objections, Defendants assert that "[t]here is no evidence in the record to support that Defendant Moore was 'directed' to 'terminate [Plaintiff] from the Work Release Program.'" Dkt. No. 34 at 8 (citing Dkt. No. 31 at 22). Defendants' assertion is baseless.

Defendant Moore expressly declared under the penalty of perjury that he "was instructed to hold a new [] review hearing . . . for the purpose of amending the Superintendent's decision . . . *to align with Supt. Brandow's final decision to remove Plaintiff* from" the Work Release Program. Dkt. No. 25-6 at 7-8, ¶¶ 35 (emphasis added). Defendant Ivey similarly declared that "Defendant Moore informed [Ivey] that Superintendent [] Stephen Brandow did not agree with the decision that Plaintiff receive 90 days probation and wanted Plaintiff to be removed from [the Program] as the type of behavior exhibited by Plaintiff could not be tolerated, so a new hearing was scheduled." Dkt. No. 25-4 at ¶ 15. This is blatant evidence of Defendants being directed to reach a certain outcome at the October 15, 2024, hearing.

"'An impartial hearing officer is one who, *inter alia*, does not prejudge evidence and who cannot say how he would assess the evidence he has not yet seen.'" *Taylor v. Microgenics Corp.*,

No. 21-CV-6452, 2023 WL 1865274, *10 (S.D.N.Y. Feb. 9, 2023) (quoting *Brooks v. Prack*, 77 F. Supp. 3d 301, 317 (W.D.N.Y. 2014)); *see also Patterson v. Coughlin*, 905 F.2d 564, 569-70 (2d Cir. 1990). "Inmates are not entitled to hearing officers 'with the same level of impartiality required by judges,' though they are 'entitled to a hearing untainted by arbitrary or pre-determined findings of guilt.'" *Jay v. Venetozzi*, No. 15-CV-147, 2020 WL 4382001, *5 (W.D.N.Y. July 30, 2020) (quoting *Fowler v. New York State Dep't of Corr. & Cmty. Supervision*, No. 13-CV-6546, 2020 WL 1905233, *3-4 (W.D.N.Y. Apr. 17, 2020)). "'[A] hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings.'" *Id.* (citation omitted); *see also Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

After conducting a de novo review of the record, the Court agrees with Magistrate Judge Katz that Defendants have failed to prove as a matter of law that the October 15, 2024, hearing outcome was anything other than pre-determined and prejudged. For this reason and the issue concerning written notice of that hearing, Defendants are not entitled to summary judgment on Plaintiff's due process claim.[2]

---

[2] Defendants object to Magistrate Judge Katz's recommendation that the Court decline to adopt Defendants' statement of material facts as true. *See* Dkt. No. 34 at 10; Dkt. No. 31 at 28. The Court has conducted a de novo review of the two substantive legal issues raised in Defendants' objections and has reviewed all other aspects of the Report-Recommendation for clear error. Upon such review, the Court finds that there are issues of fact which prevent the Court from granting Defendants' motion for summary judgment on Plaintiff's due process claim. The Court is entitled to review the entire record where the nonmoving party is *pro se*. Moreover, despite Plaintiff's failure to submit a separate statement of material facts, throughout his response in opposition to Defendant's summary judgment motion, he repeatedly cited documents from the record by their "batch no." "While courts are required to give due deference to a plaintiff's *pro se* status, that status 'does not relieve [a *pro se*] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Ayers v. Scarlotta*, No. 9:20-CV-51, 2021 WL 1575938, *2 (N.D.N.Y. Apr. 22, 2021), *R. & R. adopted*, 2021 WL 2211015 (N.D.N.Y. June 1, 2021) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). Although Plaintiff should have submitted a separate response to Defendants' statement of material facts, the Court finds no error in Magistrate Judge Katz's decision to review the entire record where Plaintiff is *pro se* and he cited the record in his opposition. The Court indeed makes the same

**B. Qualified Immunity**

In their summary judgment motion, Defendants argued that "[s]hould the Court find a question of fact as to whether Defendants Moore, Ivey, and Gaylord violated Plaintiff's Fourteenth Amendment . . ., the claims against them should be dismissed as they are entitled to qualified immunity" because they "did not violate any of Plaintiff's regulatory, statutory, or constitutional rights that were established at the time of the challenged conduct." Dkt. No. 25-7 at 16.

Magistrate Judge Katz recommended denying Defendants' motion for summary judgment on qualified immunity grounds. *See* Dkt. No. 31 at 32. Defendants argue that Magistrate Judge Katz improperly relied on only Defendant Moore's conduct "when recommending the denial of qualified immunity as to Defendants Gaylord and Ivey, as well." Dkt. No. 34 at 8. Defendants contend the Court should find Defendants' conduct to be objectively reasonable and, therefore, entitled to qualified immunity. *See id.* at 9.

In discussing whether Defendants are entitled to qualified immunity, Magistrate Judge Katz stated (1) "Defendants do not address why it is was objectively reasonable for Moore to have an off-the-record interaction with a Hudson superintendent administration official, change the outcome of [Plaintiff's] hearing, and fail to notify [Plaintiff] of that reasoning"; (2) "Moore conducted the October 15 [hearing]—immediately after the October 4 hearing—to implement a preordained decision"; and (3) "New York regulations require superintendents to issue a written statement to the temporary release committee, and the committee will then issue a statement to the incarcerated individual notifying them of their revocation," which "did not happen following

---

choice. *See Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, *1 (S.D.N.Y. June 14, 2013); *Green v. Venettozzi*, No. 9:14-CV-1215, 2018 WL 7917917, *13 (N.D.N.Y. Nov. 21, 2018), *R. & R. adopted*, 2019 WL 624922 (N.D.N.Y. Feb. 14, 2019).

the October 15 hearing." Dkt. No. 31 at 34-37.

The Court has disagreed that Plaintiff's claims concerning the regulatory requirements related to twenty-four-hour notice and the Superintendent's disagreement with the probation recommendation can independently establish due process violations. As such, the Court will dismiss those claims on the merits, and the Court need not address the application of qualified immunity to those claims. Specifically, as to Defendant Gaylord, the allegations concerning him relate only to the October 4, 2024, hearing. *See* Dkt. No. 31 at 25-26. As he has no alleged personal involvement in the claims the Court is permitting to proceed, he shall be dismissed from the action.

As to Defendants Ivey and Moore, although the Court agrees with Defendants that it must consider each Defendant, separately, the Court finds the claims against them both shall proceed. Magistrate Judge Katz correctly explained that "it [is] clearly established in New York that an inmate on work release had a legally protectable interest in remaining on such release, . . . and the minimal procedural due process requirements of notice and reasons for terminating a protected liberty interest have long been established[.]" *Kim v. Hurston*, 182 F.3d 113, 120 (2d Cir. 1999) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-65 (1974)); *see also* Dkt. No. 31 at 34. Likewise, "'[P]laintiff's right to an impartial hearing officer . . . was clearly established at the time of the hearing.'" *Parker v. Donnelly*, No. 9:21-CV-130, 2022 WL 7290103, *12 (N.D.N.Y. July 15, 2022), *R. & R. adopted*, 2022 WL 4181571 (N.D.N.Y. Sept. 13, 2022) (quoting *Tolliver v. Skinner*, 12-CV-971, 2017 WL 1017649, *6 (S.D.N.Y. Mar. 13, 2017)); *see also Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996).

The Court finds that because there are questions of fact concerning whether Plaintiff received written notice and an impartial hearing on October 15, 2024, from Defendants Moore

and Ivey, the qualified immunity defense cannot shield the due process claim related thereto at this juncture.

## II. CONCLUSION

Accordingly, after carefully reviewing the Report-Recommendation, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 31) is **ADOPTED to the extent set forth herein**; and the Court further

**ORDERS** that the Defendants' motion for summary judgment (Dkt. No. 25) is **GRANTED in part and DENIED in part**;[3] and the Court further

**ORDERS** that the Clerk of the Court shall terminate Defendants Herringshaw and Gaylord; and the Court further

**ORDERS** that Plaintiff's letter requesting the appointment of counsel (Dkt. No. 26) is **GRANTED**;[4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: October 19, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge

[3] Plaintiff's Fourteenth Amendment due process claim against Defendants Moore and Ivey related to the October 15, 2024, hearing, remains and shall be scheduled for trial absent settlement by the parties.

[4] The Clerk of the Court shall appoint pro bono counsel for trial purposes.